UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

TRANSFORMACON, INC.,

          **Plaintiff,**

    - against -

VISTA EQUITY PARTNERS, INC., LANYON
SOLUTIONS, INC., and ACTIVE
NETWORKS, LLC,

          **Defendants.**

------------------------------------------------------- X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: 7/21/15

**OPINION AND ORDER**

15-cv-3371 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      TransformaCon, Inc. ("TransformaCon") brings this action seeking damages from Vista Equity Partners, Inc. ("Vista"), Lanyon Solutions, Inc. ("Lanyon"), and Active Network LLC ("Active"). TransformaCon asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment against all defendants and tortious interference with business relations against Active only. Lanyon now moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss TransformaCon's request for lost profits and other consequential damages and its claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. By separate

motion, Vista and Active move under Rule 12(b)(6) to dismiss all claims against them. For the following reasons, Lanyon's motion is GRANTED, and Vista's and Active's motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

### A.   Facts[1]

TransformaCon is a Florida corporation with its principal place of business in Florida.[2] Vista is a California corporation with its principal place of business in California.[3] Lanyon is a Texas corporation with its principal place of business in Texas.[4] Active is a Texas limited liability corporation with its principal place of business in Texas.[5] Lanyon and Active are portfolio companies under the direction of Vista.[6]

In 2014, Lanyon and TransformaCon entered into a contract whereby TransformaCon agreed to complete certain technology-related projects outlined in a Master Services Agreement ("MSA") and three associated Statements of Work

---

[1]     The facts below are drawn from the Complaint ("Compl.").

[2]     *See* Compl. ¶ 12.

[3]     *See id.* ¶ 13.

[4]     *See id.* ¶ 14.

[5]     *See id.* ¶ 15.

[6]     *See id.* ¶ 16.

("SOWs").[7]  While Vista did not sign this contract, it was involved in the

negotiation process and provided ultimate approval for retaining TransformaCon.[8]

Further, Vista "provided specific directives and approvals for work performed by

TransformaCon, and certainly benefitted from Plaintiff's work."[9]

Prior to fall 2014, TransformaCon completed all work and Lanyon

paid all invoices due under SOWs One and Two.  However, by fall 2014, while

TransformaCon was nearing completion of SOW Three, TransformaCon stopped

receiving payments under the contract.[10]  In spite of the overdue invoices,

TransformaCon at all times worked in good faith under the agreements, including

by adding senior staff members from other projects at the insistence of Vista and

Lanyon.[11]  Eventually, several weeks after Lanyon stopped paying, TransformaCon

removed its staff from the Lanyon project, as a balance of more than $500,000

remained unpaid.[12]  On April 30, 2015, TransformaCon filed the present action in

---

[7]     *See id.* ¶ 2.  I will refer to the MSA and SOWs One, Two, and Three
together as the "contract" or "agreement."

[8]     *See id.* ¶ 3.

[9]     *Id.*

[10]    *See id.* ¶ 4.

[11]    *See id.* ¶¶ 4, 6.

[12]    *See id.* ¶ 6.

3

this Court.

## III. LEGAL STANDARD

### A. Pleading in the Alternative

In general, plaintiffs may plead in the alternative under Rule 8(a)(3).

"Moreover, causes of action that are inconsistent are permitted so long as they are

plead[ed] in separate counts."[13]  "Under our system of notice pleading and pleading

in the alternative, a party should plead all theories that [it] wishes to pursue."[14]

While plaintiffs may plead alternative contract claims, "to the extent

there is a valid and enforceable contract between plaintiff[s] and defendants,

plaintiff[s] will not be able to seek recovery in quasi contract in addition to or in

conflict with the express terms of that contract."[15]  However, if no contract exists

between the parties, plaintiffs may recover under an alternative quasi-contract

---

[13]     *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 14
Civ. 6228, 2015 WL 2354582, at *5 (S.D.N.Y. May 14, 2015). *Accord Strobl v.
New York Mercantile Exch.*, 768 F.2d 22, 30 (2d Cir. 1985) (citing Rule 8(a)(3))
("[T]he Federal Rules of Practice . . . provide that inconsistent causes of action
may be stated alternatively or hypothetically.").

[14]     *Peterson v. Insurance Co. of N. Am.*, 40 F.3d 26, 32 n.3 (2d Cir.
1994).

[15]     *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 39
(S.D.N.Y. 1991) (citing *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68,
72 (S.D.N.Y. 1988); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d
382, 389 (1987)).

4

theory.[16]

## B. Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[17] The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[18] Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[19] For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[20] Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[21] A claim is plausible "when the

---

[16]    *See id.* (citing *Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500, 504–05 (1983)).

[17]    *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

[18]    *See* 556 U.S. 662, 678–79 (2009).

[19]    *Id.* at 679.

[20]    *Id.* at 678 (citation omitted).

[21]    *Id.* at 679.

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[23]

When deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[24]  A court may also consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[25]  However, even if a document is integral to the complaint, "'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'"[26]

## C.   Leave to Amend

Rule 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written

---

[22]   *Id.* at 678 (citation omitted).

[23]   *Id.* (quotation marks omitted).

[24]   *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[25]   *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[26]   *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

6

consent of the adverse party."[27]  Although "[t]he Court should freely give leave

when justice so requires,"[28] it is "within the sound discretion of the district court to

grant or deny leave to amend."[29]  When a motion to dismiss is granted, "'[i]t is the

usual practice . . . to allow leave to replead.'"[30]  Where a plaintiff inadequately

pleads a claim and cannot offer additional substantive information to cure the

deficient pleading, granting leave to replead is futile.[31]

## IV.  APPLICABLE LAW

### A.  Contract Claims

#### 1.  Breach of Contract

##### a.  Generally

Under New York law, a breach of contract claim requires "(1) a valid

contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4)

---

[27]    *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir.
2006) (quotation marks omitted) (citations omitted).

[28]    Fed. R. Civ. P. 15(a)(2).

[29]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.
2007) (citation omitted).

[30]    *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting
*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[31]    *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

damages resulting from the breach."[32]  A breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal."[33]  "[A] non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."[34]

The plaintiff must plead facts showing that an enforceable contract existed, including facts surrounding the formation of the contract, such as the contract's date, major terms, names of the parties, and that the party to be bound actually assented to the contract.[35]  Additionally, the plaintiff must identify the specific provisions of the contract on which the plaintiff bases its claim.[36]

Under New York law, "a party has an absolute, unqualified right to

---

[32]   *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*, Nos. 14 Civ. 7091, 14 Civ. 7973, 2015 WL 221055, at *3 (S.D.N.Y. Jan. 15, 2015) (citing *Diesel Props S.r.l. v. Grey Stone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

[33]   *Id.* (quotation marks omitted).

[34]   *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991). *Accord Atari, Inc. v. Games, Inc.*, No. 04 Civ. 3723, 2005 WL 447503, at *2 (S.D.N.Y. Feb. 24, 2005) *aff'd*, 164 Fed. App'x 183 (2d Cir. 2006).

[35]   *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

[36]   *See Sheridan v. Trustees of Columbia Univ. in the City of N.Y.*, 745 N.Y.S.2d 18, 19 (1st Dep't 2002); *see also Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1st Dep't 1995).

8

terminate a contract on notice pursuant to an unconditional termination clause without court inquiry into whether the termination was activated by an ulterior motive."[37]

### b. Third-Party Beneficiaries

New York law requires that plaintiffs alleging that they are third-party beneficiaries to a contract "establish that the parties to the contract intended to confer a benefit on the third-party."[38] "It is ancient law in New York . . . that to succeed on a third party beneficiary theory, a non-party must be the *intended* beneficiary of the contract, not an *incidental* beneficiary to whom no duty is owed."[39] Under New York law, a third-party is an intended beneficiary only if "'no one other than the third-party can recover if the promisor breaches the contract' or the contract language should otherwise clearly evidence 'an intent to

---

[37] *A.J. Temple Marble & Tile, Inc. v. Long Island R.R.*, 682 N.Y.S.2d 422, 423 (2d Dep't 1998) (citing *Big Apple Car v. City of New York*, 611 N.Y.S.2d 533, 534 (1st Dep't 1994)). *Accord Division of Triple T. Serv. v. Mobil Oil Corp.* 304 N.Y.S.2d 191 (Sup. Ct. Westchester Co. 1969), *aff'd*, 311 N.Y.S.2d 961 (2d Dep't 1970).

[38] *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citing *State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35 (2000)).

[39] *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014), *cert. denied sub nom., Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*, 135 S. Ct. 1399 (2015) (quotation marks omitted) (emphasis added).

permit enforcement by the third-party.'"[40] "[D]ismissal of a third-party-beneficiary claim is appropriate . . . where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant."[41]

### c. Non-Party Liability

Under New York law, a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract.[42] New York courts also recognize an exception to this general rule:

> [A] parent company can be held liable as a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract, or if the subsidiary is a dummy for the parent, or if the subsidiary is controlled by the parent for the parent's own purposes.[43]

---

[40] *Debary v. Harrah's Operating Co., Inc.,* 465 F. Supp. 2d 250, 263–64 (S.D.N.Y. 2006) (quoting *Artwear, Inc. v. Hughes*, 615 N.Y.S.2d 689, 692 (1st Dep't 1994)).

[41] *Subaru Distribs. Corp.*, 425 F.3d at 124–25 (citing *First Capital Asset Mgmt., Inc. v. N.A. Partners, L.P.*, 688 N.Y.S.2d 25, 27 (1st Dep't 1999); *Artwear, Inc.*, 615 N.Y.S.2d at 693).

[42] *See Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, 813 N.Y.S.2d 751, 752 (2d Dep't 2006). *See also Bellino Schwartz Padob Adver., Inc. v. Solaris Mktg. Grp., Inc.*, 635 N.Y.S.2d 587, 588 (1st Dep't 1995); *Smith v. Fitzsimmons*, 584 N.Y.S.2d 692, 695 (4th Dep't 1992).

[43] *Horsehead Indus. v. Metallgesellschaft AG*, 657 N.Y.S.2d 632, 633 (1st Dep't 1997) (citing *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 946

Where a parent corporation manifests "intent to be bound" by a contract, the parent

can be considered the alter ego of the subsidiary and therefore bound by the

contract.[44] "However, New York courts recognize that a non-signatory can be

liable for a contract by manifesting an intent to be bound without being an alter ego

of a signatory to the contract."[45] A non-signatory may also be found liable for

breach of contract without being an alter ego if its actions demonstrate privity of

contract or that it assumed obligations under the contract.[46]

### d.    Lost Profits Damages

In New York, a plaintiff is entitled to recover lost profits in a breach

of contract action "only if he can establish both the existence and amount of such

damages with reasonable certainty."[47] The damages may not be merely

___

(S.D.N.Y. 1994) (noting that a non-signatory parent corporation can be bound if it
participates in the negotiations but has a subsidiary, which is a proxy of the parent,
sign the contract)).

[44]    *Id.*

[45]    *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 397
(S.D.N.Y. 2009) (citing *RUS, Inc. v. Bay Indus., Inc.*, No. 01 Civ. 6133, 2004 WL
1240578, at \*20–21 (S.D.N.Y. May 25, 2004) (applying New York law and
finding that nonsignatory was liable for breach of contract when its conduct
manifested an unequivocal intent to be bound by the contract).

[46]    *See id.*

[47]    *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (citing
*Kenford Co. v. Erie Cnty.*, 67 N.Y.2d 257, 257–58 (1986)).

11

speculative, possible, or imaginary.[48] Lost profits need not be proven with

"mathematical precision;" however, they must be "capable of measurement based

upon known reliable factors without undue speculation."[49] Projections of future

profits based upon "a multitude of assumptions" that require "speculation and

conjecture" and rely on few known factors do not provide the requisite certainty.[50]

Additionally, a plaintiff must prove that lost profits damages were

within the reasonable contemplation of the parties when the contract was made.[51]

"The party breaching the contract is liable for those risks foreseen or which should

have been foreseen at the time the contract was made."[52]

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

"Under New York law, the implied covenant of good faith and fair

dealing inheres in every contract."[53] However, breach of this implied covenant is

---

[48]    See id.

[49]    Id. (citing Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 403 (1993)).

[50]    Id. (citing Kenford Co., 502 N.Y.S.2d at 131).

[51]    See Ashland Mgmt., 82 N.Y.2d at 403.

[52]    Schonfeld, 218 F.3d at 172 (citation omitted).

[53]    Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994) (citing Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co., 30 N.Y.2d 34, 45 (1972)).

"merely a breach of the underlying contract," not a separate cause of action.[54]  For

this reason, a claim for breach of the implied covenant of good faith and fair

dealing will be dismissed as duplicative where the conduct allegedly violating the

implied covenant is also the predicate for breach of an express provision of the

underlying contract.[55]

### 3.  Unjust Enrichment

Under New York law, a claim for unjust enrichment requires that "the

defendant benefitted . . . at the plaintiff's expense [and] . . . that equity and good

conscience require restitution."[56]  "An indispensable ingredient of such a claim is

that as between the two parties involved there must be an injustice."[57]  The essence

of a cause of action for unjust enrichment is that "one party possesses money . . .

that in equity and good conscience . . . should not have [been] obtained or

---

[54]  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quotation marks omitted).

[55]  *See Houbigant, Inc. v. ACB Mercantile, Inc.*, 914 F. Supp. 964, 989 (S.D.N.Y. 1995) *modified by* 914 F. Supp. 997 (S.D.N.Y. 1996); *see also Canstar v. J.A. Jones Constr. Co.*, 622 N.Y.S.2d 730, 731 (1st Dep't 1995).

[56]  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

[57]  *Songbird Jet Ltd., Inc. v. Amax, Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984) ("The doctrine of unjust enrichment rests upon an equitable principle that a person should not be allowed to enrich himself at the expense of another.").

possessed because it rightfully belongs to another."[58] While privity is not required

to succeed on an unjust enrichment claim, such a claim also does not lie where the

relationship between the parties is too attenuated.[59]

## B. Tortious Interference with Business Relations

Under New York law, the elements of a tortious interference with

business relations claim are: "(1) there is a business relationship between the

plaintiff and a third party; (2) the defendant, knowing of that relationship,

intentionally interferes with it; (3) the defendant acts with the sole purpose of

harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or

improper means; and (4) the relationship is injured."[60]

## V. DISCUSSION

### A. Contract and Quasi-Contract Claims

#### 1. Claim One: Breach of Contract

Active and Vista argue that they are not bound by the contract

---

[58] *Rodriguez v. It's Just Lunch Int'l*, No. 07 Civ. 9227, 2009 WL
399728, at *7 (S.D.N.Y. Feb. 17, 2009), *report and recommendation adopted*,
2009 WL 666435 (S.D.N.Y. Mar. 12, 2009) (citing *Strong v. Strong*, 715 N.Y.S.2d
499, 501 (3d Dep't 2000) (quotation marks omitted)).

[59] *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182
(2011); *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007).

[60] *See Goldhirsch Grp., Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir.
1997).

14

between TransformaCon and Lanyon. Therefore, they argue, the claim for breach of contract must fail.

TransformaCon plainly alleges that Vista, the parent company of both Lanyon and Active, was intimately involved in and would benefit from the contract.[61] For example, TransformaCon alleges that Lanyon agreed to the contract under Vista's watch and control. Further, senior Vista executives reviewed and approved various aspects of SOW Three.[62] This alleged conduct is sufficient to demonstrate that Vista manifested the intent to be bound by the contract because it participated in the negotiation and controlled the subsidiary during the contract negotiations for its own benefit.[63]

TransformaCon never alleges that Active was a party to the contract.[64] In fact, the Complaint never states any reason why Active should have been bound

---

[61]     *See* Compl. ¶¶ 32–33.

[62]     *See id.* ¶¶ 34–35.

[63]     *See Horsehead Indus.*, 657 N.Y.S.2d at 633; *see also* Compl. ¶¶ 21–22 ("Vista is a private equity firm that invests in software and technology businesses. . . . Lanyon is a Vista portfolio company that purports to offer 'cloud-based' software to assist companies in the hospitality industry with managing corporate meetings, events, and travel programs.").

[64]     Only TransformaCon and Lanyon are parties to the contract. *See id.* ¶ 2; *see also* 7/14/14 MSA, Ex. 1-A to Compl., at 1, 7; 8/11/14 SOW Three, Ex. 1-B to Compl., at 1, 4.

15

to perform in any way. The contract does contemplate Active's assistance in "copying . . . Active's entire [software] footprint, which included applications and data" and that Active "would be responsible for, inter alia, providing information, documentation and appropriate access to certain systems and infrastructure activities to TransformaCon."[65] However, the Complaint's conclusory allegation that Active was the intended beneficiary of the contract[66] is belied by other allegations in the Complaint and the contract's own terms. The Complaint states that Active "shared" Lanyon's objectives and at times provided data as requested by the contracting parties.[67] SOW Three also unambiguously states that "[i]t is the *desire of Lanyon* to have [non-party affiliate of Vista] and Active run on separate ERP[[68]] systems."[69] Thus, the contract's terms contain no statement as to how or even if Active would be affected by the work contemplated in the MSA and SOW Three.

   TransformaCon's sole non-conclusory statement attempting to allege

---

  [65] Compl. ¶¶ 36, 39, 41.

  [66] *See id.* ¶ 2 ("TransformaCon's engagement was reviewed and approved by all Defendants for their collective benefit.").

  [67] *Id.* ¶ 36.

  [68] "ERP" is a technology application system that is not defined in SOW Three.

  [69] SOW Three at 1.

16

that Active approved the contract cites to the MSA.[70]  But as discussed, the MSA

does not contemplate Active's agreement to the contract.  At best TransformaCon

alleges that Active was an *incidental* beneficiary — because it shared some of

Lanyon's objectives and may have incidentally benefitted — however, such an

allegation does not state a claim under New York law.[71]

TransformaCon cites to a presentation as evidence of Active's intent

to be bound by the contract.[72]  TransformaCon alleges that its employees gave this

presentation to executives from Lanyon and Vista to explain how it would

implement certain "key objectives" described in SOW Three.[73]  In support of its

allegations, TransformaCon includes a copy of the PowerPoint presentation that it

presented to the Lanyon and Vista executives.[74]  The PowerPoint describes how

TransformaCon will perform under the contract and assigns certain responsibilities

---

[70]     *See* Compl. ¶ 25 ("TransformaCon provided a proposal for the
Project, which was approved by Defendants . . . .").

[71]     *See Hillside Metro Assocs.*, 747 F.3d at 49.

[72]     *See* 8/21/14 BSG "Operation Separation" Program Kick-Off
("PowerPoint"), Ex. 5 to Compl.

[73]     The key objectives included "(1) separat[ing] BSG from Active
Networks; (2) minimiz[ing] throw away work in preparation for business
transformation effort; and (3) complete separation as quickly as possible."  Compl.
¶ 38.

[74]     *See* Compl. ¶¶ 37–44.

17

of TransformaCon, Lanyon, Vista, and Active.[75] But TransformaCon does not

state how a presentation purporting to assign responsibilities to Active at a meeting

that Active employees did not attend could show Active's intent to be bound.

Instead, the presentation further supports the conclusion that non-signatory *Vista*

intended to be bound because Vista executives attended the presentation and

because Vista is the parent corporation.[76]

　　　　　For these reasons, Vista and Active's motion as to Claim One is

denied as to Vista and granted as to Active.

### 2. Claim Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

#### a. Lanyon and Vista

　　　　　Although the general rule in New York is that a separate claim for

breach of the implied covenant of good faith and fair dealing does not normally lie

when the parties agree that a contract exists, TransformaCon argues for an

exception. TransformaCon contends that its claim is supported by factual

allegations distinct from its breach of contract claim and points to two actions by

Lanyon and Vista in support of an exception. Neither supports a separate claim for

breach of the implied covenant.

---

[75]　　*See* PowerPoint at 1–6.

[76]　　*See* Compl. ¶¶ 37–44.

18

*First*, TransformaCon alleges that Lanyon and Vista made "unilateral

changes to the agreed-upon scope of work . . . detailed in the 'Assessment and

Recommendations' . . . and SOW Three."[77] *Second*, TransformaCon alleges that

Lanyon and Vista failed "to provide TransformaCon with the necessary

information and materials required to complete the project."[78] Both allegations

sound in breach of contract because the contract plainly governs them.[79] Thus,

there is no basis for creating an exception to the general rule. Any failure on the

part of Lanyon or Vista to provide information does not constitute a separate claim.

Because Lanyon is a party to the contract and Vista manifested an intent to be

bound, the motion to dismiss Claim Two is granted as to Lanyon and Vista.

   TransformaCon cannot state a claim for breach of contract as to

Active, thus it follows that TransformaCon cannot state a claim for breach of the

implied covenant.[80] As a result, the motion as to Claim Two is granted as to

---

[77]   *Id.* ¶ 77.

[78]   *Id.*

[79]   *See id.* ¶ 48. SOW Three, to which TransformaCon and Lanyon are
the sole signatories, specifically describes the provision of data to TransformaCon.
*See* SOW Three.

[80]   *See Atari, Inc.*, 2005 WL 447503, at *2 ("[A] non-signatory cannot be
held liable for breach of the implied covenant of good faith and fair dealing,
because there is no contract between the two parties under which to find such an
implied term.").

19

Active.

### 3.   Claim Four:  Unjust Enrichment

The parties agree that TransformaCon and Lanyon entered into a valid and binding contract.  Because an unjust enrichment claim does not lie where a valid and binding contract controls, Lanyon's motion to dismiss Claim Four is granted.

Vista, on the other hand, disputes that it is bound by the contract. Although TransformaCon has stated a breach of contract claim against Vista, this fact does not foreclose an unjust enrichment claim pleaded in the alternative under Rule 8.  Until the fact-finder determines whether the contract governs Vista (or the parties stipulate to the same), dismissing Claim Four as to Vista would be premature.[81]  Furthermore, TransformaCon properly alleges each element of unjust enrichment.[82]  Accordingly, Vista's motion as to Claim Four is denied.

Active also denies being bound by the contract.  However, that does

---

[81]     *See International Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 593 (2d Cir. 1996) ("[W]here the intent to be bound is not conclusively determinable based on the facts alleged in the complaint and the documents incorporated by reference, the issue of whether and when the parties intended to be bound is a factual issue that should be submitted to the jury.") (quotation marks omitted) (citations omitted).

[82]     *See* Compl. ¶¶ 8, 10, 59, 91–98.

20

not end the inquiry. TransformaCon does not plead *how* Active was enriched by

TransformaCon's performance, a required element of the claim.[83] TransformaCon

merely alleges that "Defendants received enrichment from TransformaCon's

services." This statement lacks the factual recitation necessary to make the claim

non-conclusory.[84] Accordingly, Active's motion as to Claim Four is granted.

## B. Claim Three: Tortious Interference with Business Relations Against Active

TransformaCon fails to adequately plead actual interference against

Active, a necessary element of its tortious interference claim. Instead,

TransformaCon pleads only conclusory allegations. For example, TransformaCon

alleges that "[i]t can only be assumed from Active's acts and omissions that

---

[83]     *See Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 845 (2d Cir. 1999) ("[A] plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if the services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery.") (citation omitted).

[84]     TransformaCon alleges that Lanyon wanted Active and another Vista affiliate BSG to run on separate systems and that Active shared this objective (Compl. ¶ 36); however, the relationship between parties that merely share an objective is too attenuated to support an unjust enrichment claim. *See Mandarin Trading Ltd.*, 16 N.Y.3d at 182.

21

Active's sole agenda was to hinder TransformaCon's work . . . ."[85]

TransformaCon's allegation is wholly conclusory because it merely repeats an allegation of actual interference. Moreover, Active may have had rational business reasons for not providing the data that TransformaCon requested. Without pleading additional facts alleging how Active's actions were nefarious and not rational business decisions, TransformaCon does not state a plausible claim.[86]

Additionally, TransformaCon relies on the August 21 presentation discussed above as evidence that Active's decision not to provide certain data was tortious interference. But TransformaCon never alleges that Active executives actually attended the presentation, ever saw materials discussed during that presentation, or were ever legally required to provide the data discussed in the contract. TransformaCon cannot allege tortious interference against Active for failing to provide certain data when it does not allege whether Active was bound to provide the data in the first place. TransformaCon does allege that Active provided some data — though not the data that TransformaCon required — but Active's decision to provide some data does not require it to provide other data absent some enforceable agreement to the contrary.

---

[85]    Compl. ¶ 84.

[86]    *See Iqbal*, 556 U.S. at 678.

22

An email attached to the Complaint sheds further light on this point.

TransformaCon's Chief Executive Officer stated that "[i]t was agreed and

approved by *Vista Executives* on the approach that would be taken . . . ."[87]  This

quotation demonstrates that Vista's executives — not Active's executives —

determined what approach TransformaCon would use to perform under the

contract and therefore what and whose data TransformaCon required.  But nothing

in the Complaint alleges that Active's executives agreed to provide their data to

TransformaCon or had any responsibility to do so.  TransformaCon cannot allege

that Active, a nonparty to the contract, interfered with the contract because Active

failed to provide something that Vista — not Active — may have agreed to

provide.  Accordingly, Active's motion as to Claim Three is granted.

## C.    Lost Profits Claim

Lanyon argues that this Court should dismiss TransformaCon's claim

for lost profits for two reasons.  *First*, Lanyon argues that the existence of a

termination clause in the contract forecloses TransformaCon's claim for lost profits

because TransformaCon cannot assume that Lanyon would have maintained the

contract any longer than it actually did.  TransformaCon responds that it may

---

[87]      *See* 10/19/14 Email from Terry Wharton, CEO of TransformaCon, to
Mark Shannon, an Active employee, Ex. 8 to Compl. (emphasis added).

23

recover lost profits because the contract does not state a firm duration, and New York courts in these circumstances imply a reasonable period after notice of termination. TransformaCon contends that it may recover lost profits that it would have earned under the contract during the reasonable notice period. The parties agree that the contract does not mention any notice period, as the contract states only that "[e]ither party may terminate . . . without cause at any time."[88] The parties disagree how to interpret this provision.

Under New York law, termination clauses must be enforced as written, including those allowing termination at any time or without cause.[89] As written, SOW Three does not require any party to give notice before termination. Thus, Lanyon's notice of termination effectively ended the contract immediately and without a notice period. As a result, TransformaCon may not recover lost profits.

*Second*, Lanyon also moves to dismiss TransformaCon's request for lost profits from "other revenue-generating projects."[90] TransformaCon alleges

---

[88] SOW Three § 3.

[89] *See A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 380 (1957); *see also Fleischmann Distilling Corp. v. Distillers Co.*, 395 F. Supp. 221, 233 (S.D.N.Y. 1975).

[90] *See* Compl. ¶ 68.

24

that defendants insisted that TransformaCon shift resources from another project to the Lanyon project.[91] But the MSA specifically states — in bold and capitalized text — that the parties' liability does not extend to "incidental, special, punitive, or consequential damages."[92]

Under New York law, "lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements."[93] TransformaCon alleges just such a loss on its collateral business arrangements. Thus, TransformaCon's request for consequential damages fails.

TransformaCon also argues that its claim for lost profits damages should survive notwithstanding the contractual bar because it is predicated on defendants' tortious acts. However, the only claims remaining for any defendant are for breach of contract or, in the alternative, unjust enrichment. The Complaint's allegations do not sound in tort because TransformaCon does not

---

[91]     Compl. ¶ 68.

[92]     MSA § 4.3(E).

[93]     *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007).

25

allege a cognizable tort claim.[94]  For these reasons, Lanyon's motion to dismiss the lost profits damages claims is granted.

## VI.   CONCLUSION

For the foregoing reasons, Lanyon's motion is GRANTED.  Vista's and Active's motion is GRANTED as to Vista as to Claim Two, DENIED as to Vista as to Claims One and Four, and GRANTED as to Active.  To the extent that TransformaCon can amend its Complaint to state a claim for breach of the implied covenant of good faith and fair dealing that is based on facts separate from its breach of contract claim, leave to amend Claim Two as to Lanyon and Vista is granted.  Leave to amend Claims One, Three, and Four against Active is also granted.  Leave to amend Claim Two against Active and Claim Four against Lanyon is denied.  Any amended pleading must be filed by August 11, 2015.  The

---

[94]      In any event, the Complaint fails to articulate how defendants' actions were "fraudulent, malicious, or prompted by . . . sinister intention" as required to overcome the contractual bar. *Kalish-Jarcho, Inc. v. City of New York*, 461 N.Y.S.2d 746, 750 (1983).  TransformaCon merely makes the conclusory allegation that "TransformaCon got the work far enough along such that Defendants could shift the remaining work [to another consultant who would take TransformaCon's place], and *Defendants stopped paying TransformaCon when calculated to be most cost efficient to them*. These bad acts were malicious and improper." Compl. ¶ 8.  In fact, the New York Court of Appeals has held that an allegation such as this, where the opposing party acted in economic self interest, does not give rise to consequential damages. *See Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 439 (1994).

26

final pretrial conference remains scheduled for January 14, 2016, at 4:30pm.  The

Clerk of Court is directed to close these motions (Dkt. Nos. 11 and 15).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 21, 2015

27

**-Appearances-**

**For Plaintiff:**

Jason Bonk, Esq.
Cozen O'Connor
277 Park Avenue
New York, NY 10172
(212) 453-3764
(646) 461-2084 (fax)
jbonk@cozen.com

**For Defendants Vista Equity Partners, Inc. and Active Network, LLC:**

Matthew Osborn Solum, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4688
(212) 446-6460 (fax)
msolum@kirkland.com

**For Defendant Lanyon Solutions:**

Charles Anthony Michael, Esq.
Brune & Richard LLP
One Battery Park Plaza
New York, NY 10004
(212) 668-1900
(212) 668-0315 (fax)
cmichael@bruneandrichard.com